UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NECTALI ULISES ROMERO ROMERO,<br><br>Petitioner,<br><br>v.<br><br>POLLY KAISER, et al.,<br><br>Respondents. | Case No. 22-cv-02508-TSH<br><br>**ORDER DENYING TEMPORARY RESTRAINING ORDER AND DENYING MOTION TO ENFORCE PRELIMINARY INJUNCTION**<br><br>Re: Dkt. Nos. 42, 43 |

Petitioner Nectali Ulises Romero Romero ("Romero") moves the Court for a temporary restraining order and an order enforcing a previously issued preliminary injunction. The Court held a hearing on November 17, 2022 and now issues the following order.[1]

**A.   Background**

    **1.**    *Romero v. Wolf*, **20-cv-8031**

Romero is a Salvadoran national and long-time resident of the United States. 20-cv-8031, ECF No. 13 at 1. On April 11, 2016 he was convicted in Los Angeles Superior Court for lewd and lascivious acts with a minor under 14 years of age, in violation of California Penal Code § 288(a), and was sentenced to six years of incarceration. *Id*. at 2. He was scheduled to be released from prison in December 2019 and was then detained by Immigration and Customers Enforcement ("ICE") pursuant to 8 U.S.C. § 1226(c), which directs that the government "shall take into custody any alien who is deportable" based on a conviction for an aggravated felony. *See* Immigration and

---

[1] The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 9, 15.

1    Nationality Act ("INA") § 237(a)(2)(A)(iii); 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is
2    convicted of an aggravated felony at any time after admission is deportable.").
3        From December 2019 through January 2021, Romero was detained at the Mesa Verde
4    Detention Facility.  20-cv-8031, ECF No. 13 at 2.  Due to Romero's prolonged detention without a
5    bond hearing, on January 26, 2021, the Court issued a writ of habeas corpus.  The Court ordered
6    the government to release Romero from custody unless within 28 days it granted him a custody
7    hearing before an immigration judge ("IJ"), at which the government had to justify by clear and
8    convincing evidence Romero's continued detention.  *Id*. at 10.  Three days later the IJ ordered
9    Romero released on numerous conditions of release.  20-cv-8031, ECF No. 17-2, Exhs. B, C.  A
10   little over a month later the IJ issued a memorandum decision explaining her decision to release.
11   *Id*., Ex. F.  The government appealed this Court's habeas order, 20-cv-8031 ECF No. 15, then
12   dismissed its appeal.  20-cv-8031 ECF No. 19.

**2.  This Case**

14   On January 13, 2022, the Board of Immigration Appeals ("BIA") vacated the IJ's bond
15   order and ordered Romero detained without bond.  ECF No. 1-17.  In brief, the BIA found by
16   clear and convincing evidence that Romero was both a danger to the community and a risk of
17   flight.  *Id*.
18   On April 25, 2022, Romero filed another habeas petition.  ECF No. 1.  The petition
19   asserted two basic theories:  first, that Romero had a due process right to a pre-deprivation bond
20   hearing before an IJ; and second, that the BIA's order was legally infirm.  *Id*.  Without reaching
21   the merits of the second theory, the Court held that the first theory raised serious questions on the
22   merits and that the remaining factors tilted in favor of interim equitable relief.  ECF No. 24.
23   Accordingly, the Court enjoined respondents "from re-detaining Petitioner . . . without adequate
24   notice and a hearing . . ."  *Id*. at 6.  The government has appealed that preliminary injunction.  ECF
25   No. 25.
26   In the meantime, the government requested that the Department of Homeland Security
27   ("DHS") provide such a hearing.  ECF No. 36 at 1 (IJ order).  The IJ held the hearing on
28   September 29, 2022, and issued a written detention order on October 11, 2022.  *Id*. at 1-2.

1   Preliminarily, the IJ noted that on August 10, 2022, the BIA had issued a final order of removal

2   against Romero. *Id*. at 2. Turning to the issue of detention, the IJ stated that "[t]here is no

3   provision in the Act or regulations allowing for a pre-deprivation hearing, as referenced by the

4   district court, as it falls outside the bounds of [] any custody hearings proscribed under INA §

5   236." *Id*. at 2. In the absence of more specific judicial guidance, the IJ decided to "apply

6   precedential case law regarding the relevant law and factors to consider in custody hearings. Also,

7   in an abundance of caution, the Court will deem the Department to bear the burden of establishing

8   that the respondent should be re-detained, as they bore the burden in the original bond hearing."

9   *Id*.

10   The IJ then found clear and convincing evidence that Romero was a danger to the

11   community. *Id*. at 3. The IJ's finding was principally based on Romero's two convictions for

12   lewd acts upon a child. The IJ noted that Romero "has complied with all conditions of parole and

13   has attended rehabilitation classes, including a weekly sex offender treatment group." *Id*. at 5.

14   Further, "[a]ccording to [Romero's] declaration and other documents in the record, the respondent

15   is subject to many conditions of release and must attend check-in appointments with both state

16   parole authorities and ICE." *Id*. The IJ gave credit to Romero "for complying with his terms of

17   supervision," *id*. "[H]owever, the Court finds that one's behavior under such close scrutiny by

18   state and federal authorities is not necessarily indicative of future behavior once such constraints

19   are removed." *Id*. Accordingly, the IJ ordered Romero detained without bond. *Id*. at 7.[2]

20   On October 19, 2022 Romero filed an amended habeas petition that added a challenge to

21   the October 11 detention order. ECF No. 39. The following day he applied for a TRO and moved

22   to enforce the preliminary injunction, the motions now before the Court. ECF Nos. 42, 43. On

23   November 2, 2022 ICE detained Romero when he voluntarily appeared for his check-in

24   appointment. ECF No. 54.

---

[2] The IJ did not reach the issue of flight risk. *Id*. at 6.

**B.     Analysis**

   **1.     Motion to Enforce the Preliminary Injunction**

Romero's motion to enforce the preliminary injunction is denied because the government complied with it. The Court ordered the government not to detain him without adequate notice and a hearing, and the government gave him adequate notice and a hearing and then detained him. Romero argues that the Court's preliminary injunction "necessarily contemplated a fundamentally fair and constitutionally adequate hearing at which all evidence was properly considered," which then becomes a springboard for him to challenge every error he sees in the hearing and the resulting detention order. However, an injunction has to give the restrained parties notice of what they are restrained from doing, and all the injunction said was that they can't re-detain Romero without notice and a hearing. Accordingly, this motion is **DENIED**.

   **2.     TRO Application**

      **a.     Legal Standard**

The same legal standard applies to a motion for a temporary restraining order and a motion for a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A petitioner seeking either remedy "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)). Alternatively, "[u]nder the 'sliding scale' variant of the *Winter* standard if a [petitioner] can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Id.* (internal quotation marks and citation omitted).

      **b.     Likely Success on the Merits or Serious Questions Going to the Merits**

         **i.     Whether Exhaustion Was Required**

Romero sought habeas relief and a TRO in this Court before exhausting an appeal of the IJ's order with the BIA. On its own motion, the Court requested supplemental briefing on whether

4

1  this is permissible. ECF No. 49. Having read the parties' supplemental briefing, and mindful that
2  this is a TRO application and not a final adjudication of the merits, the Court finds that Romero
3  has demonstrated serious questions going to the merits about whether he can proceed directly in
4  district court without first exhausting his administrative appeal.

### ii. Whether *Martinez v. Clark* Forecloses Relief

Romero makes two kinds of arguments in contending that the IJ's detention order is unconstitutional. First, he argues that given his strong interest in maintaining his liberty, his unimpeachable record during release, and the absence of evidence that shows him currently to be a danger, redetention would violate fundamental principles of liberty. This is a substantive due process argument because Romero is not asking for a better or different hearing to determine whether he should be released. Rather, he contends that the only acceptable outcome of whatever hearing is provided is that he be released. Second, and in the alternative, Romero argues that IJ committed multiple errors in authorizing his redetention, including failing to assess danger on a current basis, discounting credible expert testimony without a valid basis, and mischaracterizing record evidence. He argues that these errors serve as "red flags" that the IJ applied the wrong burden of proof. The government makes several arguments in response, but its principal one is that *Martinez v. Clark*, 36 F.4th 1219 (9th Cir. 2022), forecloses relief for Romero.

In *Martinez*, the district court ordered that Martinez (who had been detained under section 1226(c), like Romero) receive a bond hearing. *Id*. at 1223. The IJ held a hearing and found clear and convincing evidence that Martinez was a danger. The BIA affirmed. *Id*. Martinez then asked the district court to overturn the detention order. "Martinez raised three claims: (1) clear and convincing evidence did not show he is a danger to the community; (2) the BIA applied the incorrect burden of proof at his hearing; and (3) the BIA failed to consider alternatives to detention, such as conditional parole." *Id*. at 1224. The district court asserted jurisdiction over all three claims and denied habeas relief. *Id*.

As to the first claim, the Ninth Circuit found that the district court lacked jurisdiction to consider it. The Court of Appeals noted that section 1226(e) provides that the Attorney General's discretionary judgment regarding the application of that section "shall not be subject to review." It

goes on to state that "No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." 8 U.S.C. § 1226(e). The Court of Appeals held that "the determination of whether a particular noncitizen poses a danger to the community is a discretionary determination, which a federal court may not review." *Martinez*, 36 F.4th at 1228.

Martinez argued that the lack of sufficient evidence that he was a danger gave rise to a constitutional claim that fell outside section 1226(e)'s jurisdiction-stripping language. However, the Ninth Circuit rejected that argument, explaining that

> under any framing, this is an attempt to reweigh the evidence supporting a purely discretionary determination. Indeed, Martinez's argument boils down to the claim that due process forbids finding him dangerous, even considering his two drug-trafficking convictions, because he received pretrial release, engaged in rehabilitation efforts, and had community support. Thus, he argues, it's impossible to find him dangerous by the constitutionally compelled clear-and-convincing-evidence standard. But due process does not command that evidence be weighed a certain way. Simply put, we will not allow Martinez to circumvent § 1226(e)'s jurisdictional bar by "cloaking an abuse of discretion argument in constitutional garb."

*Id*. at 1230 (citation omitted).

As to Martinez's second claim, the Court of Appeals noted that the BIA had cited the correct burden of proof. The Court explained that in the absence of any red flags, it would take the BIA at its word. *Id*. at 1230-31. As to the third claim, the Court of Appeals held that the BIA was not required to consider alternatives to detention, such as conditions of release. *Id*. at 1231.

The parties dispute whether *Martinez's* first holding – that there is no jurisdiction to review the BIA's discretionary determination of dangerousness – applies here. Let's think this through closely because *Martinez* is an interesting case. If you just read the plain language of the statute, it would seem that in *Martinez* the BIA *didn't* make a discretionary decision "regarding the application of this section" or "under this section regarding detention or release of any alien . . ." 8 U.S.C. § 1226(e). The reason is that Martinez's detention was mandatory under section 1226(c), so there was no statutory discretion to exercise. The IJ held a bond hearing because the district court had determined that due process required one. Nonetheless, the Court of Appeals held that section 1226(e) applied because the hearing hoisted on DHS *related to* mandatory detention under

6

1    section 1226(c).  *Martinez*, 36 F.4th at 1228.

2       The undersigned was initially concerned that because the BIA had issued its final order of
3    removal on August 10 and the IJ's detention order was issued on October 11, at the time the
4    detention order was issued the statutory source of authority for Romero's detention was section
5    1231(a)(2).  This might have made *Martinez* distinguishable because the jurisdiction-stripping
6    language in section 1226(e) doesn't seem like it would apply to detention under other sections of
7    the INA.  The Court therefore directed the parties to file supplemental briefs addressing that issue.
8    ECF No. 60.  Having read the parties' supplemental briefs, and having thought about this issue
9    further, the Court now concludes that focusing on the statutory source of authority to detain
10   Romero on the day the detention order was issued is overly technical and misunderstands
11   *Martinez*.

12      As noted above, in *Martinez* the BIA did not actually make a discretionary decision under
13   section 1226(c) because there was no statutory discretion to exercise.  Nonetheless, the Court of
14   Appeals applied section 1226(e)'s jurisdiction-stripping language because the BIA's discretionary
15   judgments *related to* mandatory detention under section 1226(c).  *Martinez*, 36 F.4th at 1228.
16   Here, Romero was subject to mandatory detention under section 1226(c) when he filed his original
17   habeas petition in *Romero v. Wolf*, when the Court issued its habeas order directing the
18   government to release Romero unless it provided him with a bond hearing, when the BIA reversed
19   the bond order, when Romero filed this lawsuit, when the Court issued its preliminary injunction,
20   and when the government requested a detention hearing.  This Court's preliminary injunction
21   prevented DHS from implementing mandatory detention under section 1226(c) unless it gave
22   Romero notice and a hearing.  The IJ's hearing and order were nothing more than an effort to
23   comply with this Court's injunction.  Accordingly, the detention order relates to mandatory
24   detention under section 1226(c).  We do not need to decide which statutory provision authorized
25   Romero's detention at the very moment the detention order was issued[3] because the fact that the IJ

---

[3] For what it's worth, Romero argues that on the day the detention order was issued, section 1226(c) likely was the statutory source of authority for his detention. ECF Nos. 62 at 8 ("[C]ounsel believes that upon closer review, a plausible reading of current law is that § 1226(c) has (facially) authorized Mr. Romero's detention from the time of the Court's preliminary

7

issued the order a few months, rather than a few days, after this Court issued its injunction does not change the character of the IJ's order or what it relates to. It relates to mandatory detention under section 1226(c).

This means that *Martinez* is directly on point, and this Court lacks jurisdiction to review the IJ's determination of dangerousness. *See Martinez*, 36 F.4th at 1228 ("We hold that the determination of whether a particular noncitizen poses a danger to the community is a discretionary determination, which a federal court may not review."). As in *Martinez*, Romero "tries to reframe the question of whether the undisputed facts satisfy the constitutionally compelled clear-and-convincing *evidentiary* standard for dangerousness." *Id*. at 1230 (emphasis original). He argues that his convictions are remote in time, he is a low risk for recidivism, he has been rehabilitated, an expert determined he is not a risk, the prior immigration judge determined he was not a danger, and he has behaved well on release. "But under any framing, this is an attempt to reweigh the evidence supporting a purely discretionary determination. . . . [D]ue process does not command that evidence be weighed a certain way." *Id*. Romero's substantive challenges to the IJ's detention order are an attempt to repackage a challenge to a discretionary decision as a constitutional claim, indistinguishable from arguments rejected by *Martinez*. *See id*. at 1229-30.

However, Romero's procedural challenges to the IJ's order do not appear to be barred by section 1226(e)'s jurisdiction-stripping language. Romero argues that the IJ's alleged procedural errors serve as "red flags" that the IJ misapplied the burden of proof. *Martinez* confirmed that "[f]ederal courts retain jurisdiction to review these claims because they are challenges to the legal standards or statutory framework used in bond determinations and are thus constitutional claims or questions of law." *Id*. at 1230 (simplified).

On the merits, *Martinez* went on to state that "[g]enerally, in the absence of any red flags, we take the BIA as its word." *Id*. "For example, when nothing in the record or the BIA's decision indicates a failure to consider all the evidence, we will rely on the BIA's statements that it

injunction order until now."); 64 at 2.

negate the evidence that he is dangerous.

Second, Romero argues that the IJ failed to consider whether any conditions short of detention could have been implemented. He argues with some force that 20 months of good behavior while on stringent conditions of release is solid evidence that whatever danger he may present to the community can be, and was, successfully mitigated. However, in *Martinez*, the Court of Appeals held that due process does not require immigration courts to consider alternatives to detention, such as conditions of release, before deciding that a noncitizen is a danger to the community. *Id*. at 1231-32. It is not a "red flag" for the IJ not to consider something that she does not need to consider.

Third, Romero argues that the IJ discounted his expert's credible testimony regarding risk of recidivism without a valid reason. Here, Dr. Korpi determined that Romero is not attracted to pre-pubescent youths and therefore does not fit the description of a pedophile. However, the IJ explained that Dr. Korpi had never spoken with the 12-year-old victim, and there was no evidence that he was otherwise aware of her appearance at the time of the crime. That explanation for discounting Dr. Korpi's opinion that Romero is not a pedophile does not raise a "red flag." The IJ acknowledged that Dr. Korpi performed commonly used standardized tests to determine that Romero was at a low risk of reoffending. But the IJ also weighed that expert opinion against Romero's sexual abuse of a 12-year old on multiple occasions not that long ago, and concluded that Romero was a danger. A determination of dangerousness is a matter of opinion and judgment, and it is not a "red flag" for the IJ to consider and reject an expert opinion if she believes the nature of the crime supports a different conclusion.

Fourth, Romero argues that the IJ relied on improper factors and mischaracterized the record. However, none of the asserted errors shows a "red flag."

In sum, *Martinez* forecloses Romero's challenge to the IJ's finding of dangerousness. Further, as to his procedural challenges, the IJ identified the correct burden of proof, and Romero has not shown there are any "red flags" to suggest that she failed to apply it. He has therefore not shown a likelihood of success or even serious questions going to the merits.

### c. Conclusion

Without a likelihood of success or serious questions going to the merits, the remaining factors are moot. Accordingly, Romero's application for a temporary restraining order is **DENIED**.

**IT IS SO ORDERED.**

Dated: December 5, 2022

THOMAS S. HIXSON
United States Magistrate Judge