1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                   NORTHERN DISTRICT OF CALIFORNIA

8

9  NECTALI ULISES ROMERO ROMERO,          Case No.  22-cv-02508-TSH

10              Petitioner,

11        v.                              **ORDER DENYING PETITION FOR HABEAS CORPUS**

12  POLLY KAISER, et al.,                 Re: Dkt. No. 39

13              Respondents.

14

15        Petitioner Nectali Ulises Romero Romero ("Romero") has filed an Amended and

16  Supplemental Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive

17  Relief seeking release from the custody of the Department of Homeland Security's ("DHS's")

18  Immigration and Customs Enforcement ("ICE") division.[1]  ECF No. 39.  The Court denies

19  relief.

20  **A.    Background**

21        **1.    *Romero v. Wolf*, 20-cv-8031**

22        Romero is a Salvadoran national and long-time resident of the United States.  20-cv-8031,

23  ECF No. 13 at 1.  On April 11, 2016 he was convicted in Los Angeles Superior Court for lewd and

24  lascivious acts with a minor under 14 years of age, in violation of California Penal Code § 288(a),

25  and was sentenced to six years of incarceration.  *Id*. at 2.  He was scheduled to be released from

26  prison in December 2019 and was then detained by ICE pursuant to 8 U.S.C. § 1226(c), which

27  _____

28  [1] The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 9, 15.

United States District Court
Northern District of California

1   directs that the government "shall take into custody any alien who is deportable" based on a

2   conviction for an aggravated felony.  *See* Immigration and Nationality Act ("INA") §

3   237(a)(2)(A)(iii); 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated

4   felony at any time after admission is deportable.").

5        From December 2019 through January 2021, Romero was detained at the Mesa Verde

6   Detention Facility.  20-cv-8031, ECF No. 13 at 2.  Due to Romero's prolonged detention without a

7   bond hearing, on January 26, 2021, the Court issued a writ of habeas corpus.  The Court ordered

8   the government to release Romero from custody unless within 28 days it granted him a custody

9   hearing before an immigration judge ("IJ"), at which the government had to justify by clear and

10  convincing evidence Romero's continued detention.  *Id.* at 10.  Three days later the IJ ordered

11  Romero released on numerous conditions of release.  20-cv-8031, ECF No. 17-2, Exhs. B, C.  A

12  little over a month later the IJ issued a memorandum decision explaining her decision to release.

13  *Id.*, Ex. F.  The government appealed this Court's habeas order, 20-cv-8031 ECF No. 15, then

14  dismissed its appeal.  20-cv-8031 ECF No. 19.

15       **2.     This Case**

16       On January 13, 2022, the Board of Immigration Appeals ("BIA") vacated the IJ's bond

17  order and ordered Romero detained without bond.  ECF No. 1-17.  In brief, the BIA found by

18  clear and convincing evidence that Romero was both a danger to the community and a risk of

19  flight.  *Id.*

20       On April 25, 2022, Romero filed another habeas petition.  ECF No. 1.  The petition

21  asserted two basic theories:  first, that Romero had a due process right to a pre-deprivation bond

22  hearing before an IJ; and second, that the BIA's order was legally infirm.  *Id.*  Without reaching

23  the merits of the second theory, the Court held that the first theory raised serious questions on the

24  merits and that the remaining factors tilted in favor of interim equitable relief.  ECF No. 24.

25  Accordingly, the Court enjoined respondents "from re-detaining Petitioner . . . without adequate

26  notice and a hearing . . ."  *Id.* at 6.  The government has appealed that preliminary injunction.  ECF

27  No. 25.

28       In the meantime, the government requested that DHS provide such a hearing.  ECF No. 36

at 1 (IJ order).  The IJ held the hearing on September 29, 2022, and issued a written detention order on October 11, 2022.  *Id*. at 1-2.  Preliminarily, the IJ noted that on August 10, 2022, the BIA had issued a final order of removal against Romero.  *Id*. at 2.  Turning to the issue of detention, the IJ stated that "[t]here is no provision in the Act or regulations allowing for a pre-deprivation hearing, as referenced by the district court, as it falls outside the bounds of [] any custody hearings proscribed under INA § 236."  *Id*. at 2.  In the absence of more specific judicial guidance, the IJ decided to "apply precedential case law regarding the relevant law and factors to consider in custody hearings.  Also, in an abundance of caution, the Court will deem the Department to bear the burden of establishing that the respondent should be re-detained, as they bore the burden in the original bond hearing."  *Id*.

The IJ then found clear and convincing evidence that Romero was a danger to the community.  *Id*. at 3.  The IJ's finding was principally based on Romero's two convictions for lewd acts upon a child.  The IJ noted that Romero "has complied with all conditions of parole and has attended rehabilitation classes, including a weekly sex offender treatment group."  *Id*. at 5.  Further, "[a]ccording to [Romero's] declaration and other documents in the record, the respondent is subject to many conditions of release and must attend check-in appointments with both state parole authorities and ICE."  *Id*.  The IJ gave credit to Romero "for complying with his terms of supervision," *id*.  "[H]owever, the Court finds that one's behavior under such close scrutiny by state and federal authorities is not necessarily indicative of future behavior once such constraints are removed."  *Id*.  Accordingly, the IJ ordered Romero detained without bond.  *Id*. at 7.[2]

On October 19, 2022 Romero filed an amended habeas petition that added a challenge to the October 11 detention order.  ECF No. 39.  The following day he applied for a TRO and moved to enforce the preliminary injunction.  ECF Nos. 42, 43.  On November 2, 2022 ICE detained Romero when he voluntarily appeared for his check-in appointment.  ECF No. 54.  On December 5, 2022, the Court denied the motion to enforce the preliminary injunction on the ground that it had not been violated and denied the application for a TRO on the ground that Romero had not

---

[2] The IJ did not reach the issue of flight risk.  *Id*. at 6.

United States District Court
Northern District of California

1    shown a likelihood of success or serious questions going to the merits.

2        On the same day, the Court ordered the government to file its Return to the petition by

3    January 12, 2023, and Romero to file his Traverse by February 2, 2023.  The parties timely filed

4    those briefs, ECF Nos. 68 & 69, and the Court now adjudicates the claims in the Amended

5    Petition.

6    **B.    First Claim for Relief:  Violation of the Procedural Component of the Due Process
         Clause of the Fifth Amendment (Amended Petition ¶¶ 141-44)**

7        In this claim, Romero contends that the government cannot redetain him based on the

8    BIA's reversal of his prior release order.  Rather, he contends that the government must first afford

9    him a new hearing before he can be detained for a second time.  Romero elaborates on the legal

10   basis of this claim in section I of the "legal framework" discussion in paragraphs 71 to 87 of the

11   Amended Petition.

12       This claim is largely moot, and to the limited extent it is not, it is meritless.  The reason

13   this claim is largely moot is that the Court previously issued a preliminary injunction *on this claim*

14   *for relief* ordering the government not to redetain Romero unless it provided him with the hearing

15   he was requesting, *and the government then gave him that hearing*.  Accordingly, Romero has

16   obtained nearly all of the relief he sought in this claim.  With one exception, the Amended Petition

17   does not identify any process that Romero was denied.  For example, Romero doesn't say that the

18   IJ refused to admit important evidence (to the contrary, paragraph 60 of the Amended Petition

19   alleges that ICE did not object to any of Romero's evidence), or that the hearing was at an

20   inconvenient time or place, or that he didn't have counsel at the hearing (he did).  In his second

21   and fourth claims for relief he challenges the *outcome* of the hearing, including how the IJ

22   weighed and considered the evidence, but the first claim for relief is just the request for the

23   hearing that the government has since provided him.  Having scoured the Amended Petition, the

24   only allegation the Court can find of any process that Romero was denied is the allegation in

25   paragraph 81 that the IJ at the second detention hearing should have been the same one who

26   presided over his first detention hearing (i.e., the IJ who had initially ordered him released).

27   However, Romero cites no authority that procedural due process includes a right to a particular

28

United States District Court
Northern District of California

United States District Court
Northern District of California

judge.  Confirming the essential mootness of this claim, Romero's Traverse contains no discussion of it at all.

Accordingly, the Court concludes no further relief is available to Romero on this claim. He was not entitled to the same IJ at the second detention hearing, and the remainder of this claim is moot because he has received the hearing he asked for.

**C.**    **Second Claim for Relief:  Violation of the Procedural Component of the Due Process Clause of the Fifth Amendment (Amended Petition ¶¶ 145-49), and Fourth Claim for Relief:  Violation of the Substantive Component of the Due Process Clause of the Fifth Amendment (*Id*. ¶¶ 155-60)**

In these claims Romero alleges that the BIA's order vacating his bond and the second IJ's detention order denied Romero due process of law.  The Court discusses these claims together because Romero generally points to the same or similar things and calls them violations of both procedural and substantive due process.  For example, paragraph 147 in claim two alleges that the BIA failed to identify any evidence that Romero presently poses a danger, and paragraph 159 in claim four alleges that he is not a danger.  The Court therefore groups procedural and substantive due process together, and analyzes claims two and four according to the decisions they challenge.

**1.**    **BIA's January 13, 2022 Order (ECF No. 1-17)**

Romero details his challenges to the BIA's order in section II of the "legal framework" section of the Amended Petition at paragraphs 88-112.  He asserts that the BIA committed five errors.  First, he alleges that the BIA failed to apply the correct standard of review to the IJ's predictive factual findings.  Amended Petition ¶¶ 89-93.  Second, he alleges that the BIA engaged in impermissible fact-finding.  *Id*. ¶¶ 94-99.  Third, he alleges that the BIA relied on impermissible and irrelevant factors in reversing the bond grant.  *Id*. ¶¶ 100-03.  Fourth, he alleges that the BIA failed to consider alternatives to detention to mitigate any risk of flight.  *Id*. ¶¶ 104-08.  Fifth, he alleges that the BIA's order ignores controlling precedent and violates due process.  *Id*. ¶¶ 109-12.

**a.**    **Applicable Precedent**

In *Martinez v. Clark*, 36 F.4th 1219 (9th Cir. 2022), the Ninth Circuit observed that despite the plain language of 8 U.S.C. § 1226(c), "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens under § 1226(c).  The district court

1   directives flow not from statutory text, but from due process." *Id*. at 1223.  "Whether due process

2   requires a hearing for aliens detained under § 1226(c)" was not before the court in that case.  *Id*.

3   Rather, "[w]hat is before us today is the scope of federal court review of those bond

4   determinations."  *Id*.

5       In *Martinez*, the district court ordered that Martinez (who had been detained under section

6   1226(c), like Romero was) receive a bond hearing.  *Id*. at 1223.  The IJ held a hearing and found

7   clear and convincing evidence that Martinez was a danger.  The BIA affirmed.  *Id*.  Martinez then

8   asked the district court to overturn the detention order.  "Martinez raised three claims: (1) clear

9   and convincing evidence did not show he is a danger to the community; (2) the BIA applied the

10  incorrect burden of proof at his hearing; and (3) the BIA failed to consider alternatives to

11  detention, such as conditional parole."  *Id*. at 1224.  The district court asserted jurisdiction over all

12  three claims and denied habeas relief.  *Id*.

13      As to the first claim, the Ninth Circuit found that the district court lacked jurisdiction to

14  consider it.  The Court of Appeals noted that section 1226(e) provides that the Attorney General's

15  discretionary judgment regarding the application of that section "shall not be subject to review."  It

16  goes on to state that "No court may set aside any action or decision by the Attorney General under

17  this section regarding the detention or release of any alien or the grant, revocation, or denial of

18  bond or parole."  8 U.S.C. § 1226(e).  The Court of Appeals held that "the determination of

19  whether a particular noncitizen poses a danger to the community is a discretionary determination,

20  which a federal court may not review."  *Martinez*, 36 F.4th at 1228.

21      Martinez argued that the lack of sufficient evidence that he was a danger gave rise to a

22  constitutional claim that fell outside section 1226(e)'s jurisdiction-stripping language.  However,

23  the Ninth Circuit rejected that argument, explaining that

24              under any framing, this is an attempt to reweigh the evidence
            supporting a purely discretionary determination.  Indeed, Martinez's
25          argument boils down to the claim that due process forbids finding him
            dangerous, even considering his two drug-trafficking convictions,
26          because he received pretrial release, engaged in rehabilitation efforts,
            and had community support.  Thus, he argues, it's impossible to find
27          him dangerous by the constitutionally compelled clear-and-
            convincing-evidence standard.  But due process does not command
28          that evidence be weighed a certain way.  Simply put, we will not allow

United States District Court
Northern District of California

Martinez to circumvent § 1226(e)'s jurisdictional bar by "cloaking an abuse of discretion argument in constitutional garb."

*Id*. at 1230 (citation omitted).

As to Martinez's second claim, the Court of Appeals noted that the BIA had cited the correct burden of proof. The Court explained that in the absence of any red flags, it would take the BIA at its word. *Id*. at 1230-31; *see also Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001) ("A decision by the BIA or immigration judge violates due process if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case.") (cleaned up). As to the third claim, the Court of Appeals held that the BIA was not required to consider alternatives to detention, such as conditions of release. *Id*. at 1231.

### b. Analysis

*Martinez* applies here and forecloses Romero's challenge to the BIA's determination that he is a danger to the community. In addition, the logic of *Martinez* also forecloses a challenge to the BIA's determination that Romero is a flight risk. *Martinez* held that a determination of dangerousness is a discretionary decision because it is a "subjective question" that has "no clear, uniform standard" to provide an answer. 36 F.4th at 1229. The same is surely true of flight risk. Like dangerousness, a determination of flight risk is an educated guess about what someone will do if released from custody. Two different immigration judges could look at the same evidence and, in good faith, reach different conclusions about whether someone is a risk of flight because that determination is an exercise of opinion and judgment. Accordingly, the Court holds that the determination of flight risk is a discretionary decision, and when it is related to mandatory detention, *Martinez* forecloses review.

That holding does not foreclose all, or even most, of Romero's challenges to the BIA's order, however. In *Martinez*, the Ninth Circuit went on to acknowledge that federal courts can consider claims that the BIA applied the wrong burden of proof and that due process required the BIA to consider alternatives to detention. "Federal courts retain jurisdiction to review these claims because they are challenges to the legal standards or statutory framework used in bond determinations and are thus constitutional claims or questions of law." 36 F.4th at 1230 (cleaned up).

The Court believes this means it can review the following of Romero's challenges to the BIA's order:  that the BIA failed to apply the correct standard of review to the IJ's predictive factual findings (Amended Petition ¶¶ 89-93); that the BIA engaged in impermissible fact-finding (*id*. ¶¶ 94-99); that the BIA relied on impermissible and irrelevant factors in reversing the bond grant (*id*. ¶¶ 100-03); and that the BIA failed to consider alternatives to detention to mitigate any risk of flight (*id*. ¶¶ 104-08).  However, the Court lacks jurisdiction to consider Romero's allegations that the BIA's order ignores controlling precedent and violates due process (*id*. ¶¶ 109-12).  In that challenge, Romero argues that the BIA relied exclusively on his past criminal history, which he says is not sufficient to show that he is currently dangerous, and that the BIA wrongly discounted evidence that he has been rehabilitated.  *Id*. ¶¶ 110-12.  This is a straight-up challenge to how the BIA weighed the evidence before it to determine that Romero is a danger, and it is barred by *Martinez*.

So, let's turn to the four surviving challenges.  First, Romero alleges that the BIA failed to review the IJ's predictive findings for clear error.  This allegation appears to be nothing more than an empty assertion.  The BIA's order recites the clear error standard on page two and then provides a three-page discussion of why the BIA thought the IJ had clearly erred.  There is no reason to think the BIA did not apply the clear error standard.  *See Martinez*, 36 F.4th at 1230 ("Generally, in the absence of any red flags, we take the BIA at its word.").

Second, Romero alleges that the BIA made de novo factual findings on appeal.  Generally speaking, the BIA is not supposed to do that.  8 C.F.R. § 1003.1(d)(3)(iv)(A) ("The Board will not engage in factfinding in the course of deciding cases, except that the Board may take administrative notice of facts that are not reasonably subject to dispute").  Rather, the immigration judge is supposed to find the facts, which the BIA reviews for clear error.  8 C.F.R. § 1003.1(d)(3)(i).  Here, Romero is correct that the BIA made three factual findings on appeal:  (i) that Romero plied the victim with approximately five beers before sexually assaulting her; (ii) that he directed the victim to get an abortion after suspecting that he impregnated her; and (iii) that he told his brother that he could have sex with the victim.  The BIA made these findings on page two of its order, and they are nowhere to be found in the IJ's findings.  Moreover, these findings were

8

1   absolutely subject to dispute because they were drawn from an objected-to and contested

2   probation report.  In making these factual findings on appeal, the BIA violated the governing

3   regulation.  Before we figure out what consequence, if any, follows from this legal error, let's

4   finish up considering the other two claimed errors.

5         Third, Romero alleges that the BIA relied on impermissible and irrelevant factors in

6   reversing the bond grant.  He points to two alleged errors.  The first is the citations to the

7   probation report discussed in the previous paragraph.  This argument is a little hard to follow.  The

8   Court agrees that the BIA violated the applicable regulation by making three factual findings on

9   appeal, findings that were drawn from the probation report.  However, Romero presents no

10   argument or legal citation that probation reports as a category of evidence are things that cannot be

11   considered.  Accordingly, the Court treats this point as just a repetition of the previous point about

12   improper fact-finding on appeal.

13         The other allegedly impermissible and irrelevant factor Romero says the BIA relied on was

14   its reference to "the long term damage resulting from sexual abuse of a child" at page three of its

15   order.  Romero says this was error because the social damage caused by child abuse has no

16   bearing on whether he is a danger to the community, and ICE presented no evidence regarding the

17   long-term effects of child sexual abuse in general, or any particularized evidence of the harm to

18   the victim in this case.  Amended Petition ¶¶ 102-03.  However, the Court does not see that this

19   constituted any error at all.  In determining whether Romero is a danger to the community, the

20   BIA is allowed to consider how bad his crimes were.  People who commit really bad crimes that

21   often inflict life-long injury on their victims are more dangerous than people who don't.  And the

22   BIA is allowed to use common sense.  The BIA's reference to the long-term damage resulting

23   from the sexual abuse of a child was a description of the typical effect of this type of crime.  It's a

24   way of saying that Romero committed one of the very bad crimes that harms people.  There is

25   nothing wrong with this common-sense observation.

26         Fourth, Romero alleges that the BIA failed to consider alternatives to detention to mitigate

27   any risk of flight.  As an initial matter, the Court does not agree that the BIA failed to consider

28   this.  The IJ had released Romero on numerous conditions of release; in other words, the order

United States District Court
Northern District of California

9

1    under review *was* an alternative to detention.  The BIA reversed, finding that "DHS has

2    established by clear and convincing evidence that the respondent is a flight risk *that no amount of*

3    *bond could ameliorate*."  (emphasis added).  That sure looks like a finding that no alternatives to

4    detention would be adequate.

5           Romero cites the Ninth Circuit's decision in *Hernandez v. Sessions*, 872 F.3d 976 (9th Cir.

6    2017).  In that case, the immigration detainees "ha[d] been determined to be neither dangerous nor

7    so great a flight risk as to require detention without bond," *id*. at 990.  "Given that . . . the question

8    before us is:  Is consideration of the detainees' financial circumstances, as well as of possible

9    alternative release conditions, necessary to ensure that the conditions of their release will be

10   reasonably related to the governmental interest in ensuring their appearance at future hearings?"

11   *Id*. at 990-91.  The court concluded "that the answer is yes."  The court explained that "[a] bond

12   determination process that does not include consideration of financial circumstances and

13   alternative release conditions is unlikely to result in a bond amount that is reasonably related to the

14   government's legitimate interests."  *Id*. at 991.  But here, the BIA determined that Romero was

15   *both* dangerous *and* such a flight risk that detention without bond was required.  Thus, *Hernandez*

16   does not support Romero.  Considering alternatives to detention would not help inform what the

17   proper amount of the bond should be because the BIA decided that he could not be released on any

18   amount of bond.

19          Accordingly, when we review Romero's challenges to the BIA's order (that are not

20   jurisdictionally barred by *Martinez*), we see one error:  the improper finding of three facts on

21   appeal.  How much does this error matter?  In the different context of a removal proceeding, the

22   Ninth Circuit has held that the failure to procure for cross-examination the witnesses whose

23   testimony was embodied in a probation report and upon whose testimony the BIA ultimately

24   relied rendered the BIA's proceeding fundamentally unfair.  *See Alcaraz-Enriquez v. Garland*, 19

25   F.4th 1224, 1231 (9th Cir. 2021).  The Court does not think that an error of that magnitude

26   happened here.  Given the BIA's two-page, single-spaced discussion of danger, the Court simply

27   cannot believe that the erroneous fact-finding on appeal was material.  It's such a small part of the

28   discussion.  The focus of the BIA's discussion is that Romero sexually assaulted a 12-year old girl

approximately 15 times.  He exploited his position as her neighbor and a long-time friend of her family to get access to her.  The additional facts found on appeal that on at least one occasion he plied her with alcohol, that he told his brother he could have sex with her if he wanted, and that he told her to get an abortion – they add color and detail, but it is very difficult to believe the outcome would have been different had those facts not been found.  A technical violation of a regulation, unlikely to have affected the agency's decision, is all we have here, and that is not a due process violation.

Accordingly, the Court finds that Romero's challenges to the BIA's order in his second and fourth claims for relief fail.

### 2.   IJ's October 11, 2022 Order (ECF No. 36)

Romero describes his challenges to the IJ's October 11 detention order in section III of the "legal framework" section of the Amended Petition in paragraphs 113-40.  First, he alleges that there is not clear and convincing evidence that he is a danger or a risk of flight.  Amended Petition ¶¶ 113, 115-24.  Second, he alleges that there are "red flags" in the IJ's order showing that she did not hold the government to its burden of proof.  *Id.* ¶¶ 114, 125-40.

The government argues that Romero has failed to exhaust administrative remedies by challenging the IJ's order in this Court before the BIA has reviewed the order.  In the alternative, the government argues that Romero's challenges to the order are barred by *Martinez*, and to the extent they are not, have no merit.

### a.   Administrative Exhaustion

The Ninth Circuit has explained that "[o]nce an alien has received a . . . bond hearing before an immigration judge (IJ), he may appeal the IJ's decision to the Board of Immigration Appeals (BIA).  If the alien is dissatisfied with the BIA's decision, he may then file a habeas petition in the district court, challenging his continued detention.  The district court's decision on the habeas petition may be appealed to this court."  *Leonardo v. Crawford*, 646 F.3d 1157, 1159 (9th Cir. 2011).  "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused."  *Id.* at 1160; *accord*, *Singh v.*

1    *Napolitano*, 649 F.3d 899, 900 (9th Cir. 2011) ("In order to seek habeas relief under section 2241,

2    a petitioner must first, as a prudential matter, exhaust his or her available administrative

3    remedies.") (cleaned up).

4          "Although courts have discretion to waive the exhaustion requirement when it is

5    prudentially required, this discretion is not unfettered." *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th

6    Cir. 2004). "We may require prudential exhaustion when (1) agency expertise makes agency

7    consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of

8    the requirement would encourage the deliberate bypass of the administrative scheme; and (3)

9    administrative review is likely to allow the agency to correct its own mistakes and to preclude the

10   need for judicial review." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (cleaned up).

11   But "there are a number of exceptions to the general rule requiring exhaustion, covering situations

12   such as where administrative remedies are inadequate or not efficacious, pursuit of administrative

13   remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings

14   would be void." *Laing*, 370 F.3d at 1000 (cleaned up).

15         The Court concludes that administrative exhaustion was required here. An important

16   reason for this is what a viable challenge to a detention order looks like in the wake of *Martinez*.

17   As discussed above, *Martinez* held that in connection with mandatory detention under section

18   1226(c), federal courts lack jurisdiction to review an immigration court's determination that

19   someone is dangerous because that is a discretionary decision under section 1226(e).

20         Here, the IJ's order was related to mandatory detention under section 1226(c) and therefore

21   *Martinez* applies. True, technically speaking, the BIA had issued its final order of removal on

22   August 10, and the IJ's detention order was issued on October 11, so there is an argument that on

23   the day the detention order was issued, the statutory source of authority for Romero's detention

24   was section 1231(a)(2), not section 1226(c). However, Romero was subject to mandatory

25   detention under section 1226(c) when the Court issued its preliminary injunction, and when the

26   government requested a detention hearing to comply with that injunction. This Court's injunction

27   prevented DHS from implementing mandatory detention under section 1226(c) unless it gave

28   Romero notice and a hearing. The IJ's hearing and order were nothing more than an effort to

United States District Court
Northern District of California

1    comply with this Court's injunction.  Accordingly, the detention order relates to mandatory

2    detention under section 1226(c).  That the IJ issued the order a few months, rather than a few days,

3    after this Court issued its injunction does not change the character of the IJ's order or what it

4    relates to.  It relates to mandatory detention under section 1226(c).

5         Now, let's go back and remind ourselves what Romero's challenges are to the IJ's

6    detention order.  First, he alleges that there is not clear and convincing evidence that he is a danger

7    or a risk of flight.  Amended Petition ¶¶ 113, 115-24.  Because the IJ did not reach risk of flight,

8    this is really just a challenge to her dangerousness determination.  Second, he alleges that there are

9    "red flags" in the IJ's order showing that she did not hold the government to its burden of proof.

10   *Id.* ¶¶ 114, 125-40.  Under *Martinez*, the first challenge can be heard *only* by the BIA because

11   federal courts lack jurisdiction to overturn an immigration court's determination of danger in

12   connection with mandatory detention under section 1226(c).  The second challenge can be raised

13   in federal court, but if the BIA agreed that there were any "red flags" in the IJ's order, it could fix

14   them or remand for further proceedings.  It really makes no sense for Romero to bypass the BIA to

15   bring a challenge that can't be heard in federal court at all, as well as another challenge to

16   potential problems that could be fixed before they got to federal court.  Thus, the relevant factors

17   under the case law counsel in favor of requiring administrative exhaustion.  As Romero has not

18   asked for a stay, the proper course is to dismiss his challenge to the IJ's detention order without

19   prejudice.  *See Leonardo*, 646 F.3d at 1160-61 ("Here, Leonardo has not asked for a stay.  Nor has

20   he demonstrated grounds for excusing the exhaustion requirement.  We accordingly remand to the

21   district court with instructions to dismiss Leonardo's petition without prejudice.").

22        But we're not quite done with the IJ's detention order.  And the reasons is that the classic

23   exception to an exhaustion requirement is futility.  The discerning reader might think that Romero

24   has a pretty good argument that appealing the IJ's order to the BIA is futile.  After all, this lawsuit

25   began when the BIA issued an order finding Romero to be a danger and a risk of flight and

26   reversing a prior IJ's release order.  What are the odds, realistically, that he is going to win his

27   current appeal to the BIA?  Because the Ninth Circuit might conclude that administrative

28   exhaustion was futile for Romero, and to avoid an unnecessary remand, the Court will also address

the merits of Romero's challenges to the IJ's order.

### b.        Analysis of the Merits

Romero's challenge to the IJ's determination that he is a danger is foreclosed by *Martinez*. *See Martinez*, 36 F.4th at 1228 ("We hold that the determination of whether a particular noncitizen poses a danger to the community is a discretionary determination, which a federal court may not review."). As in *Martinez*, Romero "tries to reframe the question of whether the undisputed facts satisfy the constitutionally compelled clear-and-convincing *evidentiary* standard for dangerousness." *Id*. at 1230 (emphasis original). He argues that his convictions are remote in time, he is a low risk for recidivism, he has been rehabilitated, an expert determined he is not a risk, the prior immigration judge determined he was not a danger, and he has behaved well on release. "But under any framing, this is an attempt to reweigh the evidence supporting a purely discretionary determination. . . . [D]ue process does not command that evidence be weighed a certain way." *Id*. Romero's substantive challenges to the IJ's detention order are an attempt to repackage a challenge to a discretionary decision as a constitutional claim, indistinguishable from arguments rejected by *Martinez*. *See id*. at 1229-30.

However, Romero's procedural challenges to the IJ's order do not appear to be barred by section 1226(e)'s jurisdiction-stripping language. Romero argues that the IJ's alleged procedural errors serve as "red flags" that the IJ misapplied the burden of proof. *Martinez* confirmed that "[f]ederal courts retain jurisdiction to review these claims because they are challenges to the legal standards or statutory framework used in bond determinations and are thus constitutional claims or questions of law." *Id*. at 1230 (simplified).

On the merits, *Martinez* went on to state that "[g]enerally, in the absence of any red flags, we take the BIA as its word." *Id*. "For example, when nothing in the record or the BIA's decision indicates a failure to consider all the evidence, we will rely on the BIA's statements that it properly assessed the entire record." *Id*. (cleaned up). "Similarly, we accept that the BIA applied the correct legal standard if the BIA expressly cited and applied the relevant case law in rendering its decision." *Id*. at 1230-31 (cleaned up).

Here, Romero contends there are several "red flags" that show the IJ did not apply the

14

clear and convincing standard despite her statement that she did so.  First, Romero alleges that the IJ failed to assess dangerousness on a current basis.  Amended Petition ¶ 127.  However, that is not true.  The IJ explained:  "Considering the severity of the respondent's repeated sexual offenses against a twelve-year old girl, especially taking into consideration the recency of the events, the significant age difference between himself and the victim, and the significant sentence imposed, the Court finds that the respondent's criminal offense[s] are indicative of his *future dangerousness*."  ECF No. 36 at 5 (emphasis added).  The plain language of the order shows that the IJ found that Romero is dangerous now, not just in the past.

Romero argues that the IJ who ordered his detention in October 2022 had no additional evidence of his dangerousness than did the previous IJ who ordered his release in January 2021.  Amended Petition ¶ 127.  However, that is a difference of opinion between two judges, which is not a red flag.  *See Martinez*, 36 F.4th at 1229 ("What one immigration judge may find indicative of a propensity for danger, another may see as progress toward redemption.  This is exactly the type of discretionary judgment that § 1226(e) insulates from judicial review.").

Romero takes issue with the IJ's statement that his good behavior while on release under stringent conditions does not necessarily indicate what his behavior would be in the absence of such constraints.  Amended Petition ¶¶ 128-29.  He contends that the IJ engaged in highly unrealistic speculation because his conditions of parole, his sex offender registration, and his bond conditions mean that if he were released, it would not be absent such constraints.  However, Romero has misunderstood the detention order.  The IJ was deciding if Romero is dangerous, as opposed to not dangerous, and she did not give any consideration to whether he is somewhat dangerous in a way that could be mitigated.  Romero's parole, his sex offender registration requirements, and his bond conditions all presuppose that he is dangerous and are efforts to mitigate that danger.  The IJ was merely observing that someone's good behavior when he is subject to stringent supervision does not negate the evidence that he is dangerous.

Next, Romero alleges that the IJ failed to consider whether any conditions short of detention could have been implemented.  Amended Petition ¶¶ 130-33.  He argues with some force that 20 months of good behavior while on stringent conditions of release is solid evidence

1    that whatever danger he may present to the community can be, and was, successfully mitigated.

2    However, in *Martinez*, the Court of Appeals held that due process does not require immigration

3    courts to consider alternatives to detention, such as conditions of release, before deciding that a

4    noncitizen is a danger to the community.  *Id*. at 1231-32.  It is not a "red flag" for the IJ not to

5    consider something that she does not need to consider.

6         Romero also alleges that the IJ discounted his expert's credible testimony regarding risk of

7    recidivism without a valid reason.  Amended Petition ¶¶ 134-39.  Here, Dr. Korpi determined that

8    Romero is not attracted to pre-pubescent youths and therefore does not fit the description of a

9    pedophile.  However, the IJ explained that Dr. Korpi had never spoken with the 12-year-old

10   victim, and there was no evidence that he was otherwise aware of her appearance at the time of the

11   crime.  That explanation for discounting Dr. Korpi's opinion that Romero is not a pedophile does

12   not raise a "red flag."  The IJ acknowledged that Dr. Korpi performed commonly used

13   standardized tests to determine that Romero was at a low risk of reoffending.  But the IJ also

14   weighed that expert opinion against Romero's sexual abuse of a 12-year old on multiple occasions

15   not that long ago, and concluded that Romero was a danger.  A determination of dangerousness is

16   a matter of opinion and judgment, and it is not a "red flag" for the IJ to consider and reject an

17   expert opinion if she believes the nature of the crime supports a different conclusion.

18         Finally, Romero alleges that the IJ relied on improper factors and mischaracterized the

19   record by improperly (1) using a categorical approach regarding aggravated felony sex offenses,

20   (2) finding that Romero lacked remorse, and (3) speculating about unspecified inevitable harm he

21   caused to the victim.  Amended Petition ¶ 140.  As to the first allegedly improper factor, it is

22   simply made up.  The IJ's order reflects an individualized determination of danger based on the

23   facts and circumstances of Romero's crimes.  As to lack of remorse, the IJ said:  "Notably, in his

24   declaration, the respondent briefly acknowledges that he was arrested for a sex offense but does

25   not take any responsibility for his actions, does not indicate any remorse, or acknowledge any of

26   the consequences his offense may have had on the victim."  ECF No. 36 at 6.  That is not an

27   unreasonable reading of his declaration, *see* ECF No. 41-2, Ex. A, and therefore does not raise a

28   red flag.  Nor is there anything amiss in assuming that repeated sexual assault on a 12-year old girl

United States District Court
Northern District of California

1    is the type of crime that inevitably harms the victim.

2          In sum, *Martinez* forecloses Romero's challenge to the IJ's finding of dangerousness.

3    Further, as to his procedural challenges, the IJ identified the correct burden of proof, and Romero

4    has not shown there are any "red flags" to suggest that she failed to apply it.

5    **D.      Third Claim for Relief:  Violation of the Administrative Procedure Act (Amended Petition ¶¶ 150-53)**

6
7          In his third claim for relief, Romero alleges that the BIA's order reversing the first IJ's

8    release order violates the INA and is arbitrary and capricious and contrary to law under the APA.

9    Amended Petition ¶ 153.  The government argues that an APA claim is not viable in this case

10   because the APA is available only when "there is no other adequate remedy in a court," 5 U.S.C. §

11   704.  The Court need not decide that issue.  Assuming for the sake of argument that an APA claim

12   could exist here, Romero does not have a viable one.  As explained above, the Court has identified

13   one legal error the BIA committed – improper fact-finding on appeal – but does not believe this

14   regulatory violation had any effect on the outcome.

15   **E.      Conclusion**

16         The Court dismisses Romero's challenges to the IJ's detention order without prejudice for

17   failure to exhaust administrative remedies.  (In the alternative, the Court would deny relief on

18   those challenges.)  The Court denies relief on all of Romero's other claims.  The Amended

19   Petition is **DENIED**.  The Clerk of Court shall enter judgment in favor of respondents.

20         **IT IS SO ORDERED.**

21
22   Dated: March 3, 2023

23                                                    THOMAS S. HIXSON
                                                     United States Magistrate Judge
24
25
26
27
28